**James T. McDermot**t, OSB 933594
jmcdermott@mwcc.law
**Dwain M. Clifford**, OSB 025074
dclifford@mwcc.law
**MCDERMOTT WEAVER CONNELLY CLIFFORD LLP**
1000 SW Broadway, Suite 960
Portland, OR 97205
Telephone: (503) 208-6848

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
**Theodore V. Wells, Jr.**, *pro hac vice forthcoming*
twells@paulweiss.com
**Daniel J. Toal**, *pro hac vice forthcoming*
dtoal@paulweiss.com
**Yahonnes Cleary**, *pro hac vice forthcoming*
ycleary@paulweiss.com
**Caitlin Grusauskas**, *pro hac vice forthcoming*
cgrusauskas@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

*Attorneys for Respondent Exxon Mobil Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| METRO,<br><br>                    Petitioner,<br><br>          v.<br><br>EXXON MOBIL CORP., SHELL PLC, F.K.A. ROYAL DUTCH SHELL PLC, SHELL U.S.A., INC., EQUILON ENTERPRISES LLC DBA SHELL OIL PRODUCTS US, BP PLC, BP AMERICA, INC., BP PRODUCTS NORTH AMERICA, INC., CHEVRON CORP., CHEVRON U.S.A., INC., CONOCOPHILLIPS, MOTIVA ENTERPRISES, LLC, OCCIDENTAL | Case No. 3:24-cv-00019<br><br>**RESPONDENT EXXON MOBIL CORPORATION'S NOTICE OF REMOVAL** |

PETROLEUM F.K.A. ANADARKO
PETROLEUM CORP., SPACE AGE
FUEL, INC., VALERO ENERGY CORP.,
TOTALENERGIES, S.E. F.K.A. TOTAL
S.A., TOTALENERGIES MARKETING
USA F.K.A. TOTAL SPECIALTIES USA,
INC., MARATHON OIL COMPANY,
MARATHON OIL CORP., MARATHON
PETROLEUM CORP., PEABODY
ENERGY CORP., KOCH INDUSTRIES,
INC., AMERICAN PETROLEUM
INSTITUTE, WESTERN STATES
PETROLEUM ASSOCIATION,
MCKINSEY & COMPANY, INC.,
MCKINSEY HOLDINGS, INC., and
OREGON INSTITUTE OF SCIENCE
AND MEDICINE,

                    Respondents.

PLEASE TAKE NOTICE THAT Respondent Exxon Mobil Corporation ("ExxonMobil")
removes this action—while reserving all defenses and rights—from the Circuit Court of the State
of Oregon for the County of Multnomah, Case No. 23CV51762, to the United States District Court
for the District of Oregon, pursuant to 28 U.S.C. §§ 1331, 1332, and 1441(a).  All other
respondents that have been properly joined and served (collectively, "Respondents") have
consented to this Notice of Removal.

This action is removable because the requirements of 28 U.S.C. § 1332 for diversity
jurisdiction are met.  Respondents also raise an additional ground for removal solely to preserve it
for potential U.S. Supreme Court review.  Specifically, Respondents preserve the argument that
this Court has original federal question jurisdiction because the Petition necessarily arises under
or is completely preempted by federal law—including because the anticipated claims would
necessarily raise substantial federal questions—and thus is removable based on 28 U.S.C. § 1331.

NOTICE OF REMOVAL

Because the Ninth Circuit has rejected this removal ground in similar cases and Respondents raise

it solely for preservation purposes, Respondents do not discuss this ground at length in the Notice.

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND AND TIMELINESS OF REMOVAL ................................... 5

III.    SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL ....... 9

IV.     METRO'S PETITION CONSTITUTES A "CIVIL ACTION" REMOVABLE
        UNDER SECTION 1441 ............................................................................... 11

V.      THE ACTION IS REMOVABLE BECAUSE THE ONLY OREGON
        RESPONDENTS ARE FRAUDULENTLY JOINED AND PROCEDURALLY
        MISJOINED, AND THUS THERE IS COMPLETE DIVERSITY ............... 18

        A.      Fraudulent Joinder ............................................................................. 22

        B.      Procedural Misjoinder ........................................................................ 25

        C.      Amount in Controversy ...................................................................... 27

VI.     RESPONDENTS PRESERVE AN ADDITIONAL GROUND FOR REMOVAL ........ 27

VII.    THIS COURT HAS JURISDICTION UNDER SECTION 1441 AND
        REMOVAL IS PROPER ............................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Electric Power Co.* v. *Connecticut*,
    564 U.S. 410 (2011).................................................................................28

*American Petroleum Institute* v. *Minnesota*,
    No. 23-168 (U.S. Aug. 18, 2023)..........................................................28

*Betzner* v. *Boeing Co.*,
    910 F.3d 1010 (7th Cir. 2018) ...............................................................10

*Cadena* v. *Polaris Indus. Inc.*,
    No. 3:23-CV-00443-YY, 2023 WL 6004228 (D. Or. Aug. 15, 2023) ...................20

*Chicago, R.I. & P.R. Co.* v. *Stude*,
    346 U.S. 574 (1954)...............................................................................11

*Illinois* v. *City of Milwaukee*,
    406 U.S. 91 (1972).................................................................................28

*City of New York* v. *Chevron Corp.*,
    993 F.3d 81 (2d Cir. 2021).....................................................................28

*City of Oakland* v. *BP PLC*,
    No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023) ...................28

*Cong* v. *ConocoPhillips Co.*,
    No. CV H-12-1976, 2016 WL 6603244 (S.D. Tex. Nov. 8, 2016) ................ *passim*

*Dart Cherokee Basin Operating Co.* v. *Owens*,
    574 U.S. 81 (2014).................................................................................10

*Davidson* v. *S. Farm Bureau Cas. Ins. Co.*,
    No. CIV A. H-05-03607, 2006 WL 1716075 (S.D. Tex. June 19, 2006)................15

*Ekeya* v. *Shriners Hosp. for Child., Portland*,
    258 F. Supp. 3d 1192 (D. Or. 2017) (J. Simon)....................................21

*Giangola* v. *Walt Disney World Co.*,
    753 F. Supp. 148 (D.N.J. 1990) ............................................................10

*Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Manufacturing*,
    545 U.S. 308, 314 (2005)......................................................................28

*Grancare, LLC* v. *Thrower by and through Mills*,
  889 F.3d 543 (9th Cir. 2018) ....................................................22

*Great Am. Ins. Co. of New York* v. *Jackson Cnty. Sch. Dist. No. 9*,
  478 F. Supp. 2d 1227 (D. Or. 2007) (J. Panner) ...................................18

*Greene* v. *Wyeth*,
  344 F. Supp. 2d 674 (D. Nev. 2004)............................................25, 27

*Hunter* v. *Philip Morris USA*,
  582 F.3d 1039 (9th Cir. 2009) ..................................................22

*Int'l Paper Co.* v. *Ouellette*,
  479 U.S. 481 (1987)............................................................28

*Johnson* v. *Columbia Props. Anchorage*,
  LP, 437 F.3d 894 (9th Cir. 2006) ...............................................19

*Johnson* v. *England*,
  356 F.2d 44 (9th Cir. 1966) ....................................................11

*Kelly* v. *Whitney*,
  No. 98-30-HU, 1998 WL 877625 (D. Or. Oct. 27, 1998) ....................................4, 13

*Kitto* v. *Porter*,
  No. CV H-22-1382, 2022 WL 3021390 (S.D. Tex. July 13, 2022).........................15, 17

*McAboy* v. *Intel Corp.*,
  No. 3:21-CV-01773-IM, 2022 WL 1519081 (D. Or. May 13, 2022)....................20

*Morris & Co.* v. *Skandinavia Ins. Co.*,
  279 U.S. 405 (1929)............................................................3

*State ex rel. Myers* v. *Portland Gen. Elec. Co.*,
  No. CIV. 04-CV-3002-HA, 2004 WL 1724296 (D. Or. July 30, 2004)..................15

*Nationwide Invs.* v. *Miller*,
  793 F.2d 1044 (9th Cir. 1986) ..................................................11

*Page* v. *Liberty Life Assur. Co.*,
  No. 4:06-CV-572-A, 2006 WL 2828820 (N.D. Tex. Oct. 3, 2006) ......................13

*Richards for Est. of Ferris* v. *U-Haul Int'l, Inc.*,
  No. 3:23-cv-00062-HZ, 2023 WL 4146185 (D. Or. June 22, 2023) ................21, 22

*Sawyer* v. *E.I. du Pont de Nemours & Co.*,
  No. CIV.A. 06-1420, 2006 WL 1804614 (S.D. Tex. June 28, 2006)....................15

*St. Paul Mercury Indem. Co.* v. *Red Cab Co.*,
  303 U.S. 283 (1938)...........................................................................................27

*F.B.I.* v. *Superior Ct. of Cal.*,
  507 F. Supp. 2d 1082 (N.D. Cal. 2007) ...........................................................15

*Swanson* v. *Liberty Nat'l Ins. Co.*,
  353 F.2d 12 (9th Cir. 1965) ..............................................................................11

*Tapscott* v. *MS Dealer Serv. Corp.*,
  77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen* v.
  *Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)........................................25

*Teamsters Loc. 404 Health Servs. & Ins. Plan* v. *King Pharms., Inc.*,
  906 F.3d 260 (2d Cir. 2018)..............................................................................15

*In re Texas*,
  110 F. Supp. 2d 514 (E.D. Tex. 2000) ..............................................4, 13, 14, 17

*Underwood* v. *1450 SE Orient, LLC*,
  No. 3:18-cv-1366-JR, 2019 WL 1245805 (D. Or. Jan. 28, 2019) ....................26

*Warner* v. *Stryker Corp.*,
  No. 08-6368-AA, 2009 WL 1773170 (D. Or. June 22, 2009)...........................25

*Yarnevic* v. *Brink's, Inc.*,
  102 F.3d 753 (4th Cir. 1996) ............................................................................10

*Young* v. *Hyundai Motor Mfg. Alabama*,
  LLC, 575 F. Supp. 2d 1251 (M.D. Ala. 2008).................................................15

**Statutes**

28 U.S.C. § 71.........................................................................................................13

28 U.S.C. § 76.........................................................................................................13

28 U.S.C. § 77.........................................................................................................13

28 U.S.C. § 114.......................................................................................................13

28 U.S.C. § 1331.....................................................................................................28

28 U.S.C. § 1332...................................................................................6, 9, 18, 27, 28

28 U.S.C. § 1441........................................................................................... *passim*

28 U.S.C. § 1442........................................................................................... *passim*

28 U.S.C. § 1446 ............................................................................... 8, 9, 11, 28, 29

28 U.S.C. § 1447 .................................................................................................. 6

ORS 268.010, *et seq.* ......................................................................................... 18

**Other Authorities**

14B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure
    § 3702.1 (4th ed. 2020) ............................................................................ 27

14C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris.
    § 3721.1 (Rev. 4th ed.) ............................................................................. 11

Fed. R. Civ. P.  2 .......................................................................................... 12, 13

Fed. R. Civ. P. 20 .............................................................................................. 25

Fed. R. Civ. P. 27 ...................................................................................... 12, 13, 15

Fed. R. Civ. P.  81(c) ........................................................................................ 13

H. Rep. No. 80-308 (1947) ................................................................................. 13

Moore's Federal Practice (3d ed. 2007) ............................................................. 12

Oregon Rule of Civil Procedure 13 ................................................................... 14

Oregon Rule of Civil Procedure 28 ................................................................... 25

Oregon Rule of Civil Procedure 37 ............................................................ *passim*

Tex. R. Civ. P. 202 ...................................................................................... 14, 15

## I.      INTRODUCTION

Metro's petition for pre-suit discovery under Oregon Rule of Civil Procedure 37 (the "Petition") is a transparent attempt to circumvent the threshold determination whether any complaint it may file against Respondents—asserting tort claims premised on global climate change purportedly caused by the activities of billions of consumers worldwide—can properly proceed in state court.  Through the Petition, Metro seeks to avoid this critical threshold determination and proceed straight to discovery without even filing a complaint.  Metro concedes that its anticipated climate change complaint is not new; it explains that its anticipated complaint is of a piece with a dozen similar complaints filed across the country since 2017 that assert similar claims based on similar allegations.  Pet. at 7; Declaration of Daniel J. Toal in Support of Notice of Removal ("Toal Decl.") ¶ 5 Ex. 1.  None of these earlier complaints was preceded by pre-suit discovery of the kind Metro seeks here.

Metro curiously neglects to mention in its Petition that its anticipated claims mirror a complaint filed just six months ago in the *same* state circuit court by Multnomah County, a Metro-affiliated government body that is represented by most of the *same* lawyers representing Metro, against most of the *same* entities.  *See* Am. Compl., *County of Multnomah* v. *Exxon Mobil Corp.*, *et al.*, No. 23-cv-25164, (Multnomah Cty. Cir. Ct. Aug. 8, 2023), Toal Decl. ¶ 6 Ex. 2 ("Multnomah County Action").  Defendants promptly removed the Multnomah County Action to this Court based on diversity jurisdiction and it is now assigned to Magistrate Judge Youlee Yim You.  Briefing on Multnomah County's motion to remand is complete, and this Court will soon decide whether there is federal jurisdiction over the Multnomah County Action.[1]  Yet, on the same

---

[1] ExxonMobil has noted in the civil cover sheet accompanying this Notice of Removal that the Multnomah County Action is a related case.

day the district court stayed pre-trial and discovery deadlines in the Multnomah County Action pending a decision on Multnomah County's motion to remand, Metro filed its Petition.

As Metro's Petition makes clear, its anticipated claims—like those in the Multnomah County Action—will be premised on alleged misrepresentations by "fossil fuel producers and sellers" related to the alleged climate risks of fossil fuel combustion. *See, e.g.*, Pet. at 3 (asserting that Metro anticipates filing a lawsuit in Multnomah County Circuit Court based on alleged "fraudulent misconduct of fossil fuel producers and sellers who have misled [the] government and the public as to the impacts of the extraction and use of their products and the urgency of transition to noncarbon alternatives"). Metro concedes that its anticipated lawsuit will be similar to other climate cases pending around the country. *See* Pet. 7. Indeed, the suit Metro describes in its Petition precisely maps onto the core allegations of the Multnomah County Action. *See* Am. Compl., Multnomah County Action ¶ 15 ("Defendants proclaimed that climate change was not a real or imminent threat while they had actual knowledge that it was."); *id.* ("Defendants had a duty to disclose under Oregon laws, but failed to disclose . . . that pollution from their fossil fuel products was a direct cause of th[e] threat" of "global climate change"); *id.* ("To conceal their fraudulent marketing scheme, [d]efendants masked their activities through front groups, dark money funding, pseudo scientists for hire, all in an enterprise to deceive the public and Multnomah County.").

Not content to proceed in the ordinary fashion—by filing a complaint like Multnomah County and dozens of other state, municipal, and private plaintiffs, and allowing the Court an opportunity to address threshold jurisdictional issues—Metro contends that leapfrogging the normal procedures is justified here because defendants in these other actions have used "legal

maneuvers" to "delay and limit factual discovery." Pet. at 4, 7.[2]  But it is Metro that has delayed bringing its purported claims and is now attempting to capitalize on that delay and avoid litigating the legitimate jurisdictional question whether state or federal courts are the appropriate forum to adjudicate its anticipated claims premised on global climate change.  Metro's efforts are even more extraordinary because these jurisdictional issues are *currently* being litigated *in Oregon* and, as noted above, briefing on Multnomah County's motion to remand is now complete and a decision on these threshold issues will be forthcoming.  That a sister agency of Multnomah County— represented by many of the same attorneys as Metro—is now seeking discovery in *state* court while removal issues are being litigated in *federal* court in a nearly identical action, raises serious concerns that Metro is hoping to gain a tactical advantage by seeking discovery in state court before that decision is made.

Setting aside that Metro has not remotely satisfied the standard for pre-suit perpetuation testimony under ORCP 37,[3] the Petition, and the claims Metro is prepared to assert, must be adjudicated in federal court.  First, this Court has jurisdiction over the Petition under 28 U.S.C. § 1441.  Section 1441 permits removal to federal court of all "civil actions" that could otherwise be brought in federal court.  Section 1441 and the other statutory provisions governing removal indicate that "civil action" sweeps broadly and encompasses all civil judicial proceedings,

---

[2] In filing this Notice of Removal, ExxonMobil and all other Respondents do not waive, and expressly preserve, any right, defense, affirmative defense, or objection, including, without limitation, lack of personal jurisdiction, insufficient process, and/or insufficient service of process. ExxonMobil and a number of other Respondents contend that personal jurisdiction in Oregon is lacking over them, and these Respondents intend to preserve that defense and would move to dismiss for lack of personal jurisdiction the anticipated claims described in Metro's Petition.  *See, e.g.*, *Morris & Co.* v. *Skandinavia Ins. Co.,* 279 U.S. 405, 409 (1929) (removal to federal court does not waive right to object to personal jurisdiction).

[3] Respondents, including ExxonMobil, expressly preserve all arguments against the merits of Metro's Petition, including that Metro has failed to establish or allege a basis for taking the pre-suit testimony sought therein.

3-    NOTICE OF REMOVAL

including the Petition filed by Metro.  Although the removability of pre-suit discovery petitions has not been addressed by the Ninth Circuit, a number of district courts around the country, including in the District of Oregon, have permitted removal of similar petitions for pre-suit perpetuation discovery.  *See, e.g.*, *Cong* v. *ConocoPhillips Co.*, No. CV H-12-1976, 2016 WL 6603244, at *1-2 (S.D. Tex. Nov. 8, 2016) (denying the plaintiff's motion to remand, and holding that a Texas pre-suit discovery petition is a removable "civil action"); *In re Texas*, 110 F. Supp. 2d 514, 518-24 (E.D. Tex. 2000) (similar); *Kelly* v. *Whitney*, No. 98-30-HU, 1998 WL 877625, at *1 (D. Or. Oct. 27, 1998) (permitting removal of a petition for pre-suit perpetuation testimony under ORCP 37 as an "action" against federal officers under Section 1442).

Second, the action initiated by Metro is properly removed to the District of Oregon because there is diversity jurisdiction.  The two non-diverse Respondents named by Metro in this action— Space Age Fuel, Inc. ("Space Age") and the Oregon Institute for Science and Medicine ("OISM")—cannot defeat diversity jurisdiction.  OISM has not been "properly joined and served," as would be required to trigger the removal bar in 28 U.S.C. § 1441(b)(2).  In any event, both Space Age and OISM have been fraudulently joined, and procedurally misjoined, by Metro in this action in a transparent attempt to avoid the jurisdiction of this Court (as in the Multnomah County Action before it).

Metro has no possibility of establishing a cause of action against Space Age or OISM under its theory of alleged "fraudulent misconduct of fossil fuel producers and sellers who have misled [the] government and the public as to the impacts of the extraction and use of their products and the urgency of transition to noncarbon alternatives."  Pet. At 3.  The pleadings and remand proceedings in the mirror-image Multnomah County Action confirm that Metro cannot plead a "cognizable" action against Space Age or OISM.  As detailed in the Multnomah County removal

and remand papers, there is no evidence, or even allegation, that Space Age, a small Oregon business, had any special knowledge about the alleged risks of climate change, or engaged in any misrepresentation, deceptive conduct, or public relations campaign *at all*.  And OISM (which is not a defendant in the Multnomah County action) is not a "producer or seller" of fossil fuels, so it cannot possibly be liable under the theory set forth in the Petition.  Pet. at 3 (stating that the basis of Metro's likely claims are alleged misrepresentations by "fossil fuel producers and sellers").[4]

Removal is particularly justified here because Metro's anticipated claims mirror similar claims that already have been asserted in a parallel action by a sister governmental body represented by the same counsel, and those claims already are the subject of proceedings before this Court.  Metro should not be permitted to misuse the pre-suit discovery process to "circumvent" the filing of a complaint in an effort to "avoid federal court."  *See Cong*, 2016 WL 6603244, at *2.

## II.    BACKGROUND AND TIMELINESS OF REMOVAL

Metro describes itself as a "metropolitan service district" with jurisdiction over "matters of metropolitan concern" covering "24 cities and certain land within the boundaries of Multnomah, Clackamas and Washington Counties."  Pet. at 2.  Metro asserts that it is the "owner of thousands of acres of land and multiple major public facilities in Multnomah, Clackamas and Washington Counties [and] is charged with maintaining and protecting those properties and the citizens who use and live near them."  *Id.* at 4-5.  Metro's jurisdiction therefore overlaps with, and is intimately connected to, that of Multnomah County.  The interests of Metro and Multnomah align in other ways.  For example, as of December 13, 2023, Metro's "Policy Advisory Committee"—a committee established by Metro's charter to advise on land use and other critical subjects—

---

[4] Solely for purposes of preserving the argument for potential U.S. Supreme Court review, Respondents also maintain that this case is removable because Metro's anticipated claims are necessarily governed by federal law.

contains, among its 21 voting members, a designated representative from each of: (i) "Multnomah County," (ii) the "Second Largest City in Multnomah County," (iii) "Other Cities in Multnomah County," (iv) "Special Districts in Multnomah County," and (v) a "Citizen of Multnomah County." Toal Decl. ¶ 15 Ex. 11.

On June 22, 2023, Multnomah County filed a complaint against ExxonMobil and 24 other defendants in the Circuit Court of the State of Oregon for the County of Multnomah, Case No. 23CV25164.  On August 8, 2023, Multnomah County filed a First Amended Complaint.  The Amended Complaint, which spans over 200 pages and 500 paragraphs, seeks "damages and equitable relief" from the defendants for an alleged scheme to "sell fossil fuel products" while allegedly "deceptively promot[ing] them as harmless to the environment."  Am. Compl., Multnomah County Action ¶ 1.  Multnomah County purports to assert state-law claims for Public Nuisance, Negligence, Fraud & Deceit, and Trespass and seeks over $51 *billion* in compensation. *See id.*

On August 18, 2023, defendants Chevron Corporation and Chevron U.S.A., Inc. removed the Multnomah County Action to the U.S. District Court for the District of Oregon asserting, among other grounds, diversity jurisdiction under 28 U.S.C. § 1332.  Toal Decl. ¶ 7 Ex. 3.  On August 21, 2023, the case was assigned to Magistrate Judge Youlee Yim You.  On October 2, 2023, Multnomah County moved to remand the case to state court under 28 U.S.C. § 1447 on the ground that the lone Oregon-based defendant, Space Age, defeated diversity jurisdiction.  Toal Decl. ¶ 8 Ex. 4.  Defendants filed a joint opposition brief on November 16, 2023, arguing that Space Age has been fraudulently joined and procedurally misjoined, and Space Age filed an individual opposition brief the same day making similar arguments.  Toal Decl. ¶¶ 9-11 Exs. 5-7. In their removal notice and briefs opposing remand, defendants demonstrate that none of

Multnomah County's allegations about the conduct or speech of Space Age even arguably relate to any purported "campaign of deception" that supposedly forms the basis of the Multnomah County Action, and therefore Space Age has been fraudulently joined and procedurally misjoined and cannot defeat diversity jurisdiction.  Toal Decl. ¶¶ 7, 9-11 Exs. 3, 5-7.  Multnomah County filed replies to each opposition brief on December 13, 2023, Toal Decl. ¶¶ 12-13 Exs. 8-9, and defendants sought leave to file a sur-reply on December 27.  Toal Decl. ¶ 6 Ex. 10.  On December 18, 2023, Judge You ordered all discovery and pre-trial conferences stayed pending a decision on Multnomah County's motion to remand.  *See* Multnomah County Action, ECF 148 (Dec. 18, 2023).

Against this backdrop, on December 18, 2023—the same day the district court stayed pre-trial and discovery deadlines in the Multnomah County Action pending a decision on Multnomah County's motion to remand—Metro filed in the Multnomah County Circuit Court a Petition to Perpetuate Testimony Under Oregon Rule of Civil Procedure 37 against most of the same entities as in the Multnomah County Action.  Through its Petition, Metro seeks an order permitting the deposition of Dr. Martin Hoffert, a former consultant for ExxonMobil.  Pet. at 3.  Metro does not claim that it would be unable to file a complaint against Respondents absent Dr. Hoffert's testimony or that it needs Dr. Hoffert's testimony to determine whether it has a claim against Respondents.  Indeed, the Petition describes the claims Metro plans to assert against Respondents in detail, claiming that Metro's "properties have been and/or will be subject to extreme weather events . . . because of the fraudulent misconduct of fossil fuel producers and sellers who have misled government and the public as to the impacts of the extraction and use of their products and the urgency of transition to noncarbon alternatives."  Pet. at 3; *see also id.* (stating that the "subject matter" of Metro's "expected" action will "likely" include (i) Respondents' alleged "fraudulent

conduct"; (ii) Respondents' alleged "knowledge of the catastrophic risks of burning fossil fuels"; (iii) Respondents' "internal predictions of the timing and severity of the manifestations of fossil fuel-induced global warming," and (iv) the "necessary abatement measures to be taken by Petitioner and the cost of those measures"); *id.* at 1-3 (seeking testimony regarding ExxonMobil's alleged "misrepresentations concerning the effects of the extraction and combustion of fossil fuels on the Earth environment" and ExxonMobil's alleged "prior knowledge about climate change and explaining its actions and omissions based on that knowledge"). The Petition also likens Metro's anticipated claims to dozens of similar actions filed throughout the country. *See id.* at 7. And, as noted above, states, cities, counties, and municipal agencies have brought these actions *without* first seeking to perpetuate testimony—in fact, this is the first time any plaintiff in these climate change-related cases has sought to perpetuate testimony before filing a lawsuit.

In other words, Metro does not need the preservation testimony it seeks to investigate a potential claim. Instead, Metro claims that Dr. Hoffert's deposition will provide discovery relevant to the merits of its anticipated claims. *See* Pet. at 3 (asserting that Dr. Hoffert's testimony "is uniquely important to showing ExxonMobil's prior knowledge about climate change and explaining its actions and omissions based on that knowledge").

This Notice of Removal is timely because it is filed within 30 days after service. 28 U.S.C. § 1446(b). Metro purported to serve ExxonMobil on December 20, 2023. Toal Decl. ¶ 3; *id.* ¶ 5 Ex. 1. All properly joined and served Respondents have consented to removal. *Id.* ¶ 4.[5] Consent

---

[5] Although only properly joined and served Respondents are required to consent to removal, all Respondents have consented to removal with the exception of OISM. As described in the Declaration of Dwain Clifford ("Clifford Decl."), counsel for ExxonMobil took a number of steps to contact OISM to determine whether OISM has been served with the Petition, and, if so, whether OISM consents to removal, including monitoring the state docket for proof of service, calling the Oregon Secretary of State, and making multiple attempts to contact OISM's registered agent.

is not required from any Respondent that has not been properly served.  *See* 28 U.S.C. § 1446(b)(2)(A).  A copy of all process, pleadings, or orders in the possession of ExxonMobil are attached as Exhibit 1 to the Declaration of Daniel J. Toal, filed concurrently herewith.

## III.    SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

Metro characterizes its anticipated suit as "similar" to the numerous climate cases that have been filed—as early as 2017—and that are now pending nationwide. Pet. at 7 & n.4.  As described in the Petition, the purported basis for Metro's anticipated lawsuit is alleged misrepresentations by "fossil fuel producers and sellers" about the alleged connection between fossil fuel combustion and climate change and the claimed impact of climate change within Metro's jurisdiction, including Multnomah County.  *Id.* at 3.

ExxonMobil denies that any Oregon court has personal jurisdiction over it with respect to Metro's Petition and the claims described therein, and further denies that Metro is entitled to pre-suit discovery under ORCP 37.  ExxonMobil expressly reserves all rights and defenses in this regard.  For purposes of meeting the jurisdictional requirements for removal only, however, ExxonMobil submits that removal is proper, without limitation, on the ground of diversity jurisdiction.

Removal is proper under 28 U.S.C. §§ 1441 and 1332 because diversity jurisdiction exists where there is complete diversity of citizenship.  Here, Metro is a citizen of Oregon and its anticipated claims will seek damages and other relief far in excess of $75,000.  But none of the properly joined Respondents is a citizen of Oregon.  Only two Respondents are alleged to be incorporated in Oregon or to have their principal places of business in Oregon—Space Age and

---

Counsel has not seen any indication that OISM has been properly served with the Petition, and, as of today, the court docket does not reflect any proof of service on OISM.  Clifford Decl. ¶¶ 3-12.

OISM.  OISM's putative citizenship should be disregarded for jurisdictional purposes because it has not been "properly joined and served" under 28 U.S.C. § 1441(b)(2).  In any event, both OISM and Space Age have been fraudulently joined and/or procedurally misjoined to avoid federal jurisdiction, and should be disregarded for purposes of diversity jurisdiction.

In addition, solely for purposes of preserving these arguments for potential U.S. Supreme Court review, ExxonMobil maintains that this case is also removable because Petitioner's anticipated claims are necessarily governed by federal law.

Should Metro challenge this Court's jurisdiction, Respondents reserve the right to further elaborate on these grounds and will not be limited to the specific articulations in this Notice.  *Cf., e.g.*, *Betzner* v. *Boeing Co.*, 910 F.3d 1010, 1014-16 (7th Cir. 2018) (holding that district court erred by requiring evidentiary submissions by defendant in the notice of removal, in advance of briefing on a motion to remand).  The U.S. Supreme Court has upheld removal where jurisdictional facts required to support the removal were found in later-filed affidavits rather than in the notice of removal.  *See, e.g.*, *Yarnevic* v. *Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) (citing *Willingham* v. *Morgan*, 395 U.S. 402, 407 n.3 (1969)).  "[T]he Court is not limited to an examination of the original [removal] petition in determining jurisdictional questions."  *Giangola* v. *Walt Disney World Co.*, 753 F. Supp. 148, 153 n.5 (D.N.J. 1990) (cleaned up); *see also Dart Cherokee Basin Operating Co.* v. *Owens*, 574 U.S. 81, 94-95 (2014) (discussing requirement that notice of removal need contain only a short and plain statement of basis for removal, to be elaborated on if a remand motion is filed).

Respondents do not waive, and expressly reserve, all rights to submit additional arguments and evidence to show that this action is properly removable on the grounds discussed herein.

## IV.    METRO'S PETITION CONSTITUTES A "CIVIL ACTION" REMOVABLE UNDER SECTION 1441

Section 1441 of chapter 28 of the U.S. Code permits removal to federal court of "any civil action brought in a State court" over which a federal court would have original jurisdiction.  While the statute does not define "civil action," courts routinely construe the term broadly to encompass a range of actions not limited to the filing of a formal complaint.  *See Chicago, R.I. & P.R. Co.* v. *Stude*, 346 U.S. 574, 578-80 (1954) (denying motion to remand because a condemnation proceeding constituted a "civil action" under 28 U.S.C. § 1441); *Nationwide Invs.* v. *Miller*, 793 F.2d 1044, 1045 (9th Cir. 1986) (state garnishment action was a removable "civil action" under 28 U.S.C. § 1442); *Swanson* v. *Liberty Nat'l Ins. Co.*, 353 F.2d 12, 13 (9th Cir. 1965) (state garnishment proceeding was removable under 28 U.S.C. § 1441); *Johnson* v. *England*, 356 F.2d 44 (9th Cir. 1966) (denying motion to remand because a petition seeking an order to direct arbitration was a "civil action" under 28 U.S.C. § 1441); 14C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3721.1 (Rev. 4th ed.) ("The limitation to civil actions is not particularly important because the federal courts have broadly construed the term 'civil action.'").

Related provisions confirm a broad construction of the term "civil action" as used in Section 1441.  For example, 28 U.S.C. § 1446—which provides the "procedure for removal of civil actions"—confirms that the use of the term "action" is intended to encompass any legal "proceeding," not just the filing of a formal complaint.  *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a *civil action or proceeding* shall be filed within 30 days after the receipt by the defendant . . . ." (emphasis added)).  Section 1442—governing federal officer removal—further confirms that "civil action" is to be construed broadly; it similarly defines "civil action" to include "any proceeding (whether or not ancillary to another proceeding) to the extent that in such

proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." *Id.* § 1442(d)(1).

The use of "civil action" in Section 1441 also parallels that term's usage in the Federal Rules of Civil Procedure, which confirms that an action initiated under the federal pre-suit discovery rule—Rule 27—is a "civil action." In particular, Rule 2 states that "[t]here is one form of action—the *civil action*." *See* Fed. R. Civ. P. 2 (emphasis added). Necessarily, then, the "actions" described by the other Federal Rules of Civil Procedure are, in turn, "civil actions." That includes an "action" for pre-suit preservation discovery under Rule 27. Indeed, Rule 27 itself refers to the petition for pre-suit discovery as an "action." Fed. R. Civ. P. 27(a)(3) ("A reference in these rules to the court where an *action* is pending means, for purposes of this rule, the court where the petition for the deposition was filed." (emphasis added)); 1 Moore's Federal Practice Civil § 2.02 [2][a] (3d ed. 2007) ("[A]ny action within the scope of the Rules must be brought as

a civil action").[6]  Fundamentally, if Congress had intended to restrict removal under Section 1441 to a list of specified, definite types of state judicial proceedings, it would have expressly done so.[7]

The District of Oregon has permitted removal of a petition to perpetuate pre-suit testimony under ORCP 37.[8]  *See Kelly* v. *Whitney*, No. 98-30-HU, 1998 WL 877625, at *1 (D. Or. Oct. 27, 1998) (permitting the removal, as an "action" against federal officers under Section 1442, of a petition for pre-suit perpetuation testimony under ORCP 37).  Other district courts have likewise permitted removal of such actions.  *See, e.g.*, *In re Texas*, 110 F. Supp. 2d at 515, 518-24 (denying the plaintiff's motion to remand, and holding that a Texas pre-suit discovery petition is a removable "civil action"); *Page* v. *Liberty Life Assur. Co.*, No. 4:06-CV-572-A, 2006 WL 2828820, at *3 (N.D. Tex. Oct. 3, 2006) (similar); *Cong* v. *ConocoPhillips Co.*, No. CV H-12-1976, 2016 WL 6603244, at *1-2 (S.D. Tex. Nov. 8, 2016) (denying plaintiffs' motion to remand and holding that a pre-suit discovery petition is a "civil action").

---

[6] The legislative history of Section 1441 confirms that it was intended to encompass proceedings such as a petition for pre-suit discovery.  In 1948, Congress rewrote the removal provision of Title 28, including 28 U.S.C. §§ 71, 114 (1940) (the general removal provisions) and §§ 76, 77 (1940) (the federal officer removal provisions).  Sections 71 and 114 were combined and rewritten as 28 U.S.C. § 1441, and Sections 76 and 77 were combined and rewritten as 28 U.S.C. § 1442.  *See* Toal Decl. ¶ 16 Ex. 12 at A133-34 (H. Rep. No. 80-308 (1947)).  The 1948 consolidation of these removal provisions introduced the term "civil action."  According to the associated House Report, "[p]hrases such as 'in suits of a civil nature, at law or in equity,' the words 'case,' 'cause,' 'suit,' and the like [as appeared in 28 U.S.C. §§ 71, 114 (1940) were] omitted and the words 'civil action' substituted [in § 1441] in harmony with Rules 2 and 81(c) of the Federal Rules of Civil Procedure."  *Id.* at A133.  In 1948, just as today, Rule 2 of the Federal Rules of Civil Procedure provided that there is one form of action, the "civil action," which encompassed federal pre-suit discovery actions under Federal Rule 27.  *See* Fed. R. Civ. P. 2 (1947); Fed. R. Civ. P. 27 (1947).  The legislative history, therefore, supports construing "civil action" in the removal statutes to encompass a range of proceedings, beyond those initiated by filing a traditional complaint.

[7] As other courts have explained, the inclusion of the modifier "civil" indicates only that removability is limited to *non-criminal* actions.  *See In re Texas*, 110 F. Supp. 2d 514, 519 (E.D. Tex. 2000) ("[T]he term 'civil action' is meant not to define a civil proceeding with [a] certain level of involvement, but instead to distinguish civil proceedings from criminal ones.").

[8] The Ninth Circuit has not addressed whether pre-suit petitions for preservation discovery are subject to removal.

13-   NOTICE OF REMOVAL

*In re Texas* is instructive.  In that case, after undertaking an analysis of the statutory text, legislative history, and applicable precedents related to 28 U.S.C. § 1441, the district court concluded that a petition under Rule 202—the Texas rule of civil procedure governing pre-suit discovery—constituted a "civil action" and was therefore removable.  110 F. Supp. 2d at 521 ("Viewing Tex. R. Civ. P. 202 and its requirements in the context of the foregoing discussion of § 1441, the Court concludes that a Rule 202 proceeding is a 'civil action.'").  In so holding, the court defined a set of common elements indicating whether a judicial proceeding is removable as a civil action and found that pre-suit proceedings under Texas Rule 202 met all those elements. *Id.* at 521-22.  Specifically, such proceedings: (i) consist of a controversy between parties; (ii) involve pleadings (there, the petition); (iii) seek relief (there, the State had prayed for a court order authorizing the taking of depositions); and (iv) require a judicial determination (specifically, whether "authorizing depositions may prevent injustice or, on balance, will not be unduly burdensome"). *Id.*; *see also Cong*, 2016 WL 6603244, at *1 ("At its essence, a civil action is one person asking a court to do something about another person.").

For the same reasons, Metro's pre-suit petition to perpetuate testimony under ORCP 37 possesses all the elements of a removable judicial proceeding: (i) there is a controversy between Metro and the adverse parties it names; (ii) Metro has filed a pleading[9]—the petition for pre-suit preservation testimony, which includes Metro's description of the alleged facts constituting its anticipated claims against the Respondents; (iii) Metro seeks or will seek relief in the form of a court order authorizing Dr. Hoffert's deposition; and (iv) a judicial determination is required— whether the perpetuation testimony "may prevent a failure or delay of justice."  ORCP 37.

---

[9] Under ORCP 13, "pleadings" are defined as "the written statements by the parties of the facts constituting their respective claims and defenses."

14-  NOTICE OF REMOVAL

While some district courts have held that certain pre-suit discovery proceedings are not removable "civil actions," those cases are distinguishable because, among other distinctions, they declined to permit removal of pre-suit discovery proceedings initiated for purposes of *investigating* whether a claimant has potential claims rather than to preserve testimony for a suit that is expected to be filed.[10]  But here—unlike a request for pre-suit discovery for the purposes of *investigating* a claim—ORCP 37 assumes the existence of a claim "cognizable" in Oregon court and requires that Metro is "likely to be a party to an action cognizable in" Oregon court.   ORCP 37 A(1).[11]

---

[10] *See, e.g.*, *State ex rel. Myers* v. *Portland Gen. Elec. Co.*, No. CIV. 04-CV-3002-HA, 2004 WL 1724296, at *3 (D. Or. July 30, 2004) (declining to permit removal under Section 1441(a) where the Attorney General of the State of Oregon sought pre-suit investigation though a Civil Investigative Demand); *F.B.I.* v. *Superior Ct. of Cal.*, 507 F. Supp. 2d 1082, 1088 (N.D. Cal. 2007) (declining, *in dicta*, to hold that removal of a judge-issued subpoena against two federal agents would be appropriate under Section 1441, in part because "the parties are simply removing two state court subpoenas and a state court order seeking to compel petitioners as third parties to submit to the state discovery process."); *see also Kitto* v. *Porter*, No. CV H-22-1382, 2022 WL 3021390, at *1 (S.D. Tex. July 13, 2022), *report and recommendation adopted*, No. CV H-22-1382, 2022 WL 3018196 (S.D. Tex. July 29, 2022) (remanding where petitioner sought a deposition "to investigate a potential claim by Petitioner, in advance of filing suit."); *Davidson* v. *S. Farm Bureau Cas. Ins. Co.*, No. CIV A. H-05-03607, 2006 WL 1716075, at *1 (S.D. Tex. June 19, 2006) (remanding where petitioner sought a deposition "in order to determine what, if any, claims Plaintiff may have arising out of the accident and [the opposing party's] denial of her underinsured motorist claim."); *Young* v. *Hyundai Motor Mfg. Alabama*, LLC, 575 F. Supp. 2d 1251, 1252 (M.D. Ala. 2008) (remanding pre-suit discovery petition "with the stated purposes of ascertaining the identity of the proper parties to the suit and avoiding a frivolous lawsuit if no claim exists against [the opposing party]"); *Sawyer* v. *E.I. du Pont de Nemours & Co.*, No. CIV.A. 06-1420, 2006 WL 1804614, at *2 n.2 (S.D. Tex. June 28, 2006) (remanding where the express "purpose" of the "Rule 202 petition is to investigate a potential claim.").

[11] While the Second Circuit has held that pre-suit discovery petitions under New York state law do not constitute "civil actions," the petition at issue in that case was not for preservation or perpetuation testimony, and the court expressly declined to extend its holding to such petitions. *Teamsters Loc. 404 Health Servs. & Ins. Plan* v. *King Pharms., Inc.*, 906 F.3d 260, 267 (2d Cir. 2018) ("Permitting removal of petitions under [NY Civil Practice Law and Rules] § 3102(c) [the New York state pre-suit discovery statute], moreover, would significantly undermine New York's policy of granting potential litigants a forum to obtain information to assist in deciding how, or whether, to institute a civil action.  In contrast to NY Civil Practice Law and Rules § 3102(c), the Federal Rules of Civil Procedure do not authorize comparable discovery.  Rule 27(a) authorizes pre-action discovery only for the preservation of testimony and requires that the petitioner unequivocally state that he expects to be a party to an action.").

Moreover, none of these cases considered the removability of a pre-suit petition for testimony to support expected claims that mirror similar claims already asserted in a parallel action by a related entity, and that were the subject of removal proceedings in federal court.

*Cong* is particularly instructive on this point. In *Cong,* the district court permitted removal of a pre-suit discovery petition because the facts demonstrated the same gamesmanship that Metro and Multnomah County are attempting here, *i.e.*, the state-court petition "directly relate[d] to claims . . . already asserted before" the federal district court. 2016 WL 6603244, at *1. There, a group of fishermen filed suit in the Southern District of Texas against an oil and gas company, alleging environmental harm from an oil spill in China. While that suit was pending, a second group of fishermen, represented by the same attorneys as the first, filed a pre-suit discovery petition in Texas state court against the same defendant, seeking to depose company executives. *Id.* After the defendant removed the petition to the Southern District of Texas, the plaintiffs filed a motion to remand, arguing that the petition was not a "civil action" but "merely a discovery tool that might lead to the filing of one." *Id.* Rejecting that argument, the court explained that the term "civil action . . . applies to a wide range of activities that may be brought before a court irrespective of how the parties may characterize it at common law, equity, or admiralty." *Id.* (holding that "a civil action is one person asking a court to do something about another person"); *see id.* (explaining that plaintiffs' pre-suit discovery petition "is hostile and adversarial. It is the opening salvo of the fishermen's third action—the start of a new American lawsuit. It may be removed to federal court.").

In concluding that the pre-suit discovery petition was removable to federal court, the court in *Cong* relied on the fact that the petition "parallel[ed]" the complaint filed by the first group of fishermen that was already pending in the same federal district court, and had been filed by the

same lawyers.  *Id.*  The court also denied remand on the basis that a pre-suit deposition request may not be used as a mechanism "to impose costs on the defendant without meeting the preparation and disclosure requirements of a properly pleaded action and attempting to avoid federal court." *Id.* at *2; *see id.* ("A pre-suit deposition may not be used to circumvent the [plaintiffs'] responsibility to review the facts they possess and plead properly—a short statement of the cause of action to give notice of the claim.").

Analogous facts support removal here.  Metro's Petition was filed by lawyers who also represent a closely related plaintiff—Multnomah County—that recently asserted substantially similar claims to those Metro expects to file, against most of the same entities.  The parallel claims that Multnomah County filed are currently the subject of removal proceedings before this very Court.  The Metro Petition therefore is "directly connected" to the Multnomah County Action pending in federal court, and this Court should permit removal under Section 1441 for the same reasons that the *Cong* court permitted removal.  *Id.*; *see also Kitto*, 2022 WL 3021390, at *2 ("There is some logic in viewing a petition seeking discovery connected directly to a federal case as remov[a]ble to federal court.  In such a case, there *is* a 'civil action'—the federal case.").

Permitting Metro to proceed in state court would undermine Respondents' right to adjudicate the proper forum for suits premised on global climate change, like the one for which Metro seeks discovery, and would undermine this Court's power to exercise jurisdiction over such claims.  *See In re Texas*, 110 F. Supp. 2d at 524 (holding that "a claim brought in state court [that] seeks to attack or undermine an order of a federal district court" falls within the original jurisdiction of the district courts (citation omitted)).  Metro should not be permitted to use the pre-suit discovery process to circumvent important threshold questions about the proper forum in which its claims should be litigated and leapfrog into discovery in state court, merely by strategically

delaying its filing of a complaint. Removing Metro's Petition ensures that these threshold jurisdictional questions are resolved before litigation about the propriety of pre-suit discovery and, eventually, of Metro's "expected" action in state court.

## V.    THE ACTION IS REMOVABLE BECAUSE THE ONLY OREGON RESPONDENTS ARE FRAUDULENTLY JOINED AND PROCEDURALLY MISJOINED, AND THUS THERE IS COMPLETE DIVERSITY

This action is removable because the requirements of 28 U.S.C. § 1332 for diversity jurisdiction are met. There is complete diversity of citizenship for purposes of federal jurisdiction. Petitioner is a citizen of Oregon, but none of the properly served and joined Respondents is a citizen of Oregon. The Petition also describes claims that will involve alleged damages far in excess of $75,000, thereby satisfying the amount-in-controversy requirement.

For diversity purposes, local governments are citizens of the State in which they are located. *See, e.g.*, *Great Am. Ins. Co. of New York* v. *Jackson Cnty. Sch. Dist. No. 9*, 478 F. Supp. 2d 1227, 1230 (D. Or. 2007) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes" (quoting *Moor* v. *Alameda Cnty*, 411 U.S. 693, 717 (1973))). Accordingly, Metro, a "metropolitan service district" established under ORS 268.010, *et seq.*, is a citizen of Oregon.

Metro's Petition joins 26 Respondents that Metro expects to name in its anticipated climate-change lawsuit. *See* Pet. at 4 (noting that the Petition lists "[t]he names of persons or entities Petitioner expects will be adverse parties"); *see also* ORCP 37 (requiring such petition to include "names or a description of the persons petitioner expects will be adverse parties"). Based on the allegations in Exhibit 2 to Metro's Petition, 24 of these entities are incorporated and have their principal places of business outside of Oregon or, to the extent they are limited liability

corporations, do not have any members who are citizens of Oregon.[12]  *See* Pet. Ex. 2 at 1-3 (listing Exxon Mobil Corp.,[13] Shell plc, Shell USA, Inc., Equilon Enterprises LLC,[14] BP plc, BP America Inc., BP Products North America, Inc.,[15] Chevron Corporation, Chevron U.S.A. Inc.,[16] ConocoPhillips,[17] Motiva Enterprises, LLC,[18] Occidental Petroleum,[19] Valero Energy Corporation,[20] TotalEnergies SE, TotalEnergies Marketing USA, Inc.,[21] Marathon Oil Company, Marathon Oil Corporation,[22] Marathon Petroleum Corporation,[23] Peabody Energy Corporation,[24]

---

[12] "[A]n LLC is a citizen of every state of which its owners/members are citizens."  *Johnson* v. *Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

[13] ExxonMobil is incorporated in New Jersey with its principal place of business in Texas.

[14] Shell plc is registered in England and Wales with its headquarters and principal place of business in England.  Equilon Enterprises LLC's members are Shell Oil Products Company LLC and TMR Company LLC.  Shell Oil Products Company LLC's member is Shell USA, Inc.  TMR Company LLC's member is Shell USA, Inc.  Shell USA, Inc. is incorporated in Delaware with its principal place of business in Texas.

[15] BP Products North America Inc. is incorporated in Maryland with its principal place of business in Illinois.  BP plc is organized under the laws of England and Wales and has its principal place of business in London, United Kingdom.  BP America Inc. is organized under the laws of Delaware and has its principal place of business in Houston, Texas.

[16] Chevron Corporation is incorporated in Delaware with its principal place of business in California.  Chevron U.S.A. Inc. is incorporated in Pennsylvania with its principal place of business in California.

[17] ConocoPhillips is incorporated in Delaware with its principal place of business in Texas.

[18] Motiva Enterprises LLC's members, Aramco Financial Services Company and Saudi Refining, Inc., are both incorporated in Delaware and both have their principal places of business in Texas.

[19] Occidental Petroleum Corporation is incorporated in Delaware with its principal place of business in Texas.

[20] Valero Energy Corporation is incorporated in Delaware with its principal place of business in Texas.

[21] TotalEnergies SE is organized and existing under the laws of the Republic of France with its corporate headquarters and principal offices in Courbevoie, France.  TotalEnergies Marketing USA, Inc. is incorporated in Delaware with its principal place of business in Texas.

[22] Marathon Oil Corporation is incorporated in Delaware with its principal place of business in Texas.  Marathon Oil Company is incorporated in Ohio with its principal place of business in Texas.

[23] Marathon Petroleum Corporation is incorporated in Delaware with its principal place of business in Ohio.

[24] Peabody Energy Corporation is incorporated in Delaware with its principal place of business in Missouri.

Koch Industries, Inc.,[25] American Petroleum Institute,[26] Western States Petroleum Association,[27] McKinsey & Company, Inc., and McKinsey Holdings, Inc.[28]).

Only two Respondents are alleged to be citizens of Oregon: Space Age and OISM.  Metro's attempted joinder of OISM cannot bar removal under the "forum defendant rule" because that rule applies only "if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." *McAboy* v. *Intel Corp.*, No. 3:21-CV-01773-IM, 2022 WL 1519081, at *2 (D. Or. May 13, 2022) (quoting 28 U.S.C. § 1441(b)(2)) (emphasis added). This Court has held that the forum-defendant rule does not apply where an out-of-forum defendant seeks to remove the case before the in-forum defendant is served.  *See Cadena* v. *Polaris Indus. Inc.*, No. 3:23-CV-00443-YY, 2023 WL 6004228, at *3 (D. Or. Aug. 15, 2023), *report and recommendation adopted*, No. 3:23-CV-00443-YY, 2023 WL 7017837 (D. Or. Sept. 14, 2023); *see also McAboy*, No. 3:21-CV-01773-IM, 2022 WL 1519081, at *3 ("[T]he bar to removal under 28 U.S.C. § 1441(b)(2) is only triggered if the forum defendant is served.").  Here, there is no indication that OISM has been served.[29]  It therefore must be disregarded for purposes of the forum-defendant rule.

---

[25] Koch Industries, Inc. is incorporated in Kansas with its principal place of business in Kansas.
[26] American Petroleum Institute is incorporated in the District of Columbia with its principal place of business in the District of Columbia.
[27] Western States Petroleum Association is a nonprofit corporation incorporated in California with its principal place of business in California.
[28] McKinsey & Company, Inc. is incorporated in New York with its principal place of business in New York.  McKinsey Holdings, Inc. is incorporated in Delaware with its principal place of business in New York.
[29] As outlined in the Clifford Declaration, counsel for ExxonMobil diligently sought to determine whether Metro has served OISM.  There is no indication that Metro has done so.  The state court docket has no indication that OISM was properly served, the registered agent for OISM could not be reached, and the Oregon Secretary of State—which can be served in the alternative for dissolved entities like OISM—has no indication of service.  *Id.*; *see also supra* note 5.

In any event, Metro has fraudulently joined and procedurally misjoined both of these entities in a transparent attempt to avoid federal jurisdiction, and this Court therefore should disregard their citizenship in assessing diversity jurisdiction. *See*, *e.g.*, *Richards for Est. of Ferris* v. *U-Haul Int'l, Inc.*, No. 3:23-cv-00062-HZ, 2023 WL 4146185, at *6-7 (D. Or. June 22, 2023) (denying motion to remand and holding that the only non-diverse Oregon defendant was fraudulently joined because "[d]efendants have met their burden to establish there is no possibility that a state court would find that the [Second Amended Complaint] states a cause of action against" the Oregon defendant).[30]

Metro's list of Respondents comprises large, multinational oil and gas companies involved in production, refining, and distribution across the globe; large oil and gas trade associations; and multinational consulting companies.  Neither Space Age nor OISM is any of these things.  As explained further below, Space Age is a "family owned," father-and-son-operated, Oregon business that owns and operates twenty-one retail fuel and convenience stores and fifteen truck and trailers that supply retail and wholesale fueling facilities. *See* Toal Decl. ¶ 17-18 Exs. 13-14.  OISM is a non-profit research institute; it is not in the business of producing or selling any fossil fuels at all.  Clifford Decl. ¶ 7 Ex. 4.  Indeed, as of 2021, OISM declared it had *zero* employees, and it was recently dissolved by the Oregon Secretary of State.  Clifford Decl. ¶ 5 Ex. 2.  Metro's decision to include these anomalous Oregon entities in its petition is an obvious attempt to defeat diversity jurisdiction and keep this action out of federal court.  Tellingly, of the more than a dozen concededly similar climate-change lawsuits that have been brought in recent years by States and municipalities

---

[30] For the same reason, Space Age's and OISM's citizenship should be disregarded for purposes of the "forum defendant rule," which ordinarily prevents removal based on diversity jurisdiction if one or more defendants are citizens of the forum State. *See Ekeya* v. *Shriners Hosp. for Children, Portland*, 258 F. Supp. 3d 1192, 1199-1201 (D. Or. 2017).

around the country, this is the only one (aside from the Multnomah County action described above) in which either Space Age or OISM has been named.

###    A.    Fraudulent Joinder

"When 'determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined.'" *Richards*, 2023 WL 4146185, at *4 (denying remand because non-diverse defendant was fraudulently joined, and quoting *Grancare, LLC* v. *Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018)).  A removing defendant may establish the fraudulent joinder of a non-diverse defendant by showing the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter* v. *Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009).  "[T]he party seeking removal is entitled to present additional facts that demonstrate that a defendant has been fraudulently joined." *Grancare*, 889 F.3d at 549.  Here, Space Age and OISM have been fraudulently joined because Metro cannot state a claim against either of them that could possibly survive dismissal under Oregon state law based on the theory set forth in the Petition. *See Hunter*, 582 F.3d at 1044. Moreover, in its Petition, Metro does not identify any connection between the testimony it seeks from Dr. Hoffert and either entity.

According to its website, Space Age owns a retail chain of fuel and convenience stores, operating twenty-one locations and fifteen truck and trailers and supplying additional retail and wholesale fueling facilities. *See* Toal Decl. ¶¶ 17-18 Exs. 13-14.  Metro cannot state a claim against Space Age under its theory of alleged "fraudulent misconduct of fossil fuel producers and sellers who have misled [the] government and the public as to the impacts of the extraction and use of their products and the urgency of transition to noncarbon alternatives," based on Respondents' alleged superior "knowledge of the catastrophic risks of burning fossil fuels" and "internal predictions of

the timing and severity of the manifestations of fossil fuel-induced global warming." Pet. at 3. As demonstrated in the removal notice and remand briefing in the Multnomah County Action, Metro has no basis to allege that Space Age is involved in the exploration, production, or refining of fossil fuels, that Space Age had any early or superior knowledge or understanding of climate-change science compared to the general public, or that Space Age made any misleading statements, let alone false or deceptive statements. *See* Toal Decl. ¶ 7 Ex. 3 at 14-17; *id.* ¶ 9 Ex. 5 at 13-28; *id.* ¶ 10 Ex. 6 at 2-9; *id.* ¶ 11 Ex. 7 at 4-8. Indeed, as demonstrated by Space Age's response in opposition to the remand motion in the Multnomah County Action:

> Space Age has never done any of the following: (1) engaged in any marketing campaign relating to greenhouse gases, climate change, or other science of climate change, Pliska Decl. ¶ 8; (2) engaged in any lobbying or advocacy campaign relating to greenhouse gases, climate change, or the science of climate change, id. ¶ 9; (3) released or made any public statement about the causes or science of climate change, the impact of Space Age's products or fossil fuel products generally on climate change, or the effects of climate change, id. ¶ 10; (4) conducted any research relating to greenhouse gases, climate change, or the science of climate change, id. ¶ 11; nor (5) obtained any information about greenhouse gases, climate change, or the science of climate change, beyond what information has been available to the general public, id. ¶ 12.

Toal Decl. ¶ 10 Ex. 6 at 7. This sworn declaration by Space Age confirms that there is no possibility of stating a claim against Space Age under the theory of liability set forth in Metro's Petition.

For similar reasons, Metro also cannot state a claim against OISM. As an initial matter, the Petition concedes, and the Secretary of State website confirms, that OISM has been administratively dissolved. Pet. Ex. 2 at 2; Clifford Decl. ¶ 5 Ex. 2. But even assuming that the pre-dissolution citizenship of a dissolved non-profit entity could be used to establish diversity for jurisdictional purposes, Metro also cannot state a claim against OISM under its theory of alleged "fraudulent misconduct of *fossil fuel producers and sellers* who have misled [the] government and

the public as to the impacts of the extraction and use of their products and the urgency of transition to noncarbon alternatives."  Pet. at 3 (emphasis added).  According to its website, OISM was "a non-profit research institute established in 1980 to conduct basic and applied research in subjects immediately applicable to increasing the quality, quantity, and length of human life."  Clifford Decl. ¶ 7 Ex. 4.  According to OISM's IRS Form 990 filings, as of 2021—the most recent year for which such records are publicly available—the total number of people employed by OISM was *zero*.  *Id.* ¶ 6 Ex. 3 at 5.  The Petition does not explain what connection an organization like OISM has to claims aimed at "fossil fuel producers and sellers," Pet. at 3, nor does it identify any connection between the testimony it seeks from Dr. Hoffert and OISM.

The single allegation that mentions OISM in the Multnomah County Action (which did *not* name OISM as a defendant) also cannot support a claim against OISM under the theory articulated in Metro's Petition.  Multnomah County alleges that the president of OISM participated in the "organiz[ation] and circulat[ion]" of a petition "urg[ing] the United States government" not to endorse the proposed Kyoto Protocol and similar international agreements, in light of the lack of "convincing scientific evidence" that anthropogenic climate change would lead to "catastrophic" disruption of the Earth's climate.  *See* Am. Compl., Multnomah County Action ¶¶ 410-11.  But it is unclear from this allegation what role, if any, OISM as an organization played in the petition.[31]

Because Metro cannot state any viable climate deception claim against Space Age or OISM under the theory of liability it articulates in the Petition, this Court should ignore the citizenship of

---

[31] Indeed, the OISM website states that the Kyoto Protocol petition project "does not utilize any Oregon Institute of Science and Medicine resources or funds.  It also has no funding from energy industries or other parties with special interests in the global warming debate."  Clifford Decl. ¶ 8 Ex. 5.

Space Age and OISM for purposes of determining diversity, resulting in complete diversity of citizenship for federal-jurisdiction purposes.[32]

B.    **Procedural Misjoinder**

For similar reasons, Space Age and OISM are also procedurally *mis*joined.  The doctrine of procedural misjoinder permits a court to sever claims against non-diverse defendants when "the joinder of the non-diverse [d]efendants does not comply with the Federal rules," permitting the Court to retain diversity jurisdiction over the remainder of the case.  *Greene* v. *Wyeth*, 344 F. Supp. 2d 674, 683 (D. Nev. 2004); *see also, e.g.*, *Tapscott* v. *MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen* v. *Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  Procedural misjoinder occurs when joinder would not be permissible under the applicable rules of civil procedure; here, Federal Rule of Civil Procedure 20 and Oregon Rule of Civil Procedure 28.  *Green*, 344 F. Supp. 2d. at 685.  Under both the federal and state joinder rules, claims must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" to be properly joined.  Fed. R. Civ. P. 20(a)(1)(A); ORCP 28(A) (same); *see also Warner* v. *Stryker Corp.*, No. 08-6368-AA, 2009 WL 1773170, at *1 (D. Or. June 22, 2009) (explaining that "[t]he mere existence of common questions of law or fact does not satisfy the same transaction or occurrence requirement").

As explained *supra*, Metro cannot possibly state a cognizable claim against Space Age or OISM.[33]  But even if any such claim were cognizable, it would not arise out of the same transaction

---

[32] The allegations about Space Age and OISM in the Multnomah County Action also necessarily target core political speech and advocacy protected by the First Amendment, which is an additional reason why Metro cannot state a viable claim against Space Age or OISM under the theory articulated in its Petition.

[33] Respondents maintain that the claims against them are also not cognizable and fully reserve their rights to contest Metro's claims on the merits—in federal court and after Metro files its lawsuit.

or occurrence as Metro's anticipated claims against the other Respondents.  As this Court has explained, claims against one group of defendants for production of a product do not "involve the same transactions and occurrences" as claims against another group of defendants for "acquisition and retail sales" of that product.  *C.f. Underwood* v. *1450 SE Orient, LLC*, No. 3:18-cv-1366-JR, 2019 WL 1245805, at *4-5 (D. Or. Jan. 28, 2019) (granting a motion to sever "retail defendants" under Rule 20(a), because claims against them did not involve the "same transactions and occurrences" as claims against "producer defendants"), *report and recommendation adopted*, 2019 WL 1246194 (D. Or. Mar. 18, 2019).  Space Age does not produce or refine fossil fuels, and as demonstrated above, it has not engaged in any marketing campaign, lobbying, advocacy, or research relating to greenhouse gases, climate change, or other science of climate change, nor has it released or made any public statement about the causes or science of climate change, the impact of Space Age's products or fossil fuel products generally on climate change, or the effects of climate change.  Therefore, any possible claims against Space Age necessarily would fail to satisfy the standard for joinder—that the claim arise from the same transaction or occurrence.

A similar analysis applies to OISM.  OISM is a "non-profit research institute" with zero employees as of 2021, whose established purpose is to "conduct basic and applied research in subjects immediately applicable to increasing the quality, quantity, and length of human life." Clifford Decl. ¶ 7 Ex. 4.  Metro's anticipated claims are premised on the purported "fraudulent misconduct of *fossil fuel producers and sellers* who have misled [the] government and the public as to the impacts of the extraction and use of *their products*."  Pet. at 3 (emphasis added).  OISM does not produce, acquire, or sell fossil fuel products, so any possible claim against OISM necessarily would similarly fail to satisfy the standard for joinder—that the claim arises from the same transaction or occurrence as the claims against other Respondents.

Because the claims against Space Age and OISM are not properly joined under the applicable rules of civil procedure, those claims are "procedurally misjoined" and should be severed from this action and disregarded for removal purposes. As the *Greene* court explained, the doctrine of procedural misjoinder should be applied where, as here, "the joinder is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum, and where the rights of the parties and interest of justice is best served by severance." *Greene*, 344 F. Supp. 2d at 685.

### C.    Amount in Controversy

The amount-in-controversy of Metro's anticipated claims for alleged damages related to global climate change far exceed the $75,000 requirement, exclusive of interest and costs.[34] 28 U.S.C. § 1332(a). For example, the parallel Multnomah County complaint seeks over $51 *billion* in compensation. Am. Compl., Multnomah County Action at 203-204 (seeking $50 million in alleged compensatory past damages, $1.5 billion in alleged compensatory "future damages," and an abatement fund "in the amount of at least" $50 billion). Accordingly, this action is removable under 28 U.S.C. § 1441(a) and (b)(2).

## VI.    RESPONDENTS PRESERVE AN ADDITIONAL GROUND FOR REMOVAL

Respondents recognize that aside from diversity jurisdiction, an additional ground for removal has been foreclosed by the Ninth Circuit—that the claims Metro anticipates filing necessarily are governed by federal common law or necessarily raise substantial federal questions.

---

[34] Respondents do not concede—and in fact deny—that Petitioner is entitled to any of the relief it seeks or expects to seek. A plaintiff's claim "fixes the right of the defendant to remove" whether "well or ill founded in fact." *St. Paul Mercury Indem. Co.* v. *Red Cab Co.*, 303 U.S. 283, 294 (1938); *see also* 14B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3702.1 (4th ed. 2020) ("[A] defendant who seeks to prove that the amount in controversy is greater than the jurisdictional amount does not automatically concede that the jurisdictional amount is recoverable.").

*See City of Oakland* v. *BP PLC*, Nos. 22-16810,. 22-16812, 2023 WL 8179286 (9th Cir. Nov. 27,

2023).  Respondents assert this ground for the sole purpose of preserving it for potential Supreme

Court review.  Because the claims Metro anticipates filing must be governed by federal common

law or necessarily raise substantial federal questions, under our federal constitutional system, state

law cannot apply.  *See, e.g.*, *Am. Elec. Power Co., Inc.* v. *Connecticut*, 564 U.S. 410 (2011); *Int'l

Paper Co.* v. *Ouellette*, 479 U.S. 481 (1987); *Illinois* v. *City of Milwaukee*, 406 U.S. 91 (1972);

*City of New York* v. *Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021); *see also* Pet. for Writ of Cert.,

*American Petroleum Institute* v. *Minnesota*, No. 23-168 (U.S. Aug. 18, 2023) ("Whether one views

a putative state-law claim governed by federal common law as a disguised federal claim or as a

state-law claim the elements of which each raise substantial federal questions, *see Grable & Sons

Metal Products, Inc.* v. *Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005), such a

claim is properly understood to arise under federal law.").

## VII.    THIS COURT HAS JURISDICTION UNDER SECTION 1441 AND REMOVAL IS PROPER

Based on the allegations in the Petition, this Court has original jurisdiction over this action

pursuant to 28 U.S.C. §§ 1331, 1332, and 1441(a).  Accordingly, removal of this action is proper

under 28 U.S.C. §§ 1441(a) and 1446.

The United States District Court for the District of Oregon is the appropriate venue for

removal pursuant to 28 U.S.C. § 1441(a) because it embraces the place where Petitioner originally

filed its action, in the Circuit Court of the State of Oregon for the County of Multnomah.  *See* 28

U.S.C. § 1441(a).

All Respondents that have been properly joined and have purportedly been served have

consented to the removal of the action, *see* Toal Decl. ¶ 4; Clifford Decl. ¶¶ 3-4, 9-12, and there is

no requirement that any party that has not been properly joined and served consent.  *See* 28 U.S.C.

§ 1446(b)(2)(A) (requiring consent only from "all defendants who have been properly joined and served").[35]  Copies of all process, pleadings, and orders from the state-court action being removed to this Court that are in the possession of ExxonMobil are attached hereto as Exhibit 1 to the Toal Declaration.  Pursuant to 28 U.S.C. § 1446(a), this constitutes "a copy of all process, pleadings, and orders" received by ExxonMobil in the action.  Upon filing this Notice of Removal, ExxonMobil will furnish written notice to Petitioner's counsel, and will file and serve this Notice upon the Clerk of the Circuit Court of the State of Oregon for the County of Multnomah, pursuant to 28 U.S.C. § 1446(d).

Accordingly, Respondent ExxonMobil removes to this Court the above action pending against it in the Circuit Court of the State of Oregon.

Dated: January 3, 2024

s/ James T. McDermott
James T. McDermott, OSB 933594
Dwain M. Clifford, OSB 025074

Theodore V. Wells, Jr., *pro hac vice forthcoming*
Daniel J. Toal, *pro hac vice forthcoming*
Yahonnes Cleary, *pro hac vice forthcoming*
Caitlin Grusauskas, *pro hac vice forthcoming*

Attorneys for Respondent Exxon Mobil Corporation

---

[35] Although not necessary, all Respondents have consented except OISM who could not be contacted.  *See supra* note 5; Clifford Decl. at ¶¶ 3-4, 9-12.

CERTIFICATE OF SERVICE

I hereby certify that, on January 3, 2024, I served the foregoing paper on the following

parties by United States Postal Service, regular first-class mail (and a courtesy copy by email):

Tim Williams
tim@rdwyer.com
DWYER WILLIAMS CHERKOSS ATTORNEYS, P.C.
1558 SW Nancy Way, Suite 101
Bend, OR 97702

James S. Coon
jcoon@tcnf.legal
820 SW 2nd Ave., Ste. 200
Portland, OR 97204

Jeffrey B. Simon
jsimon@sgptrial.com
SIMON GREENSTONE PANATIER, P.C.
1201 Elm Street, Suite 3400
Dallas, Texas 75270

Roger G. Worthington
rworthington@rgwpc.com
WORTHINGTON & CARON, P.C.
273 W. 7th Street
San Pedro, CA 90731
Telephone: 310-221-8090
Facsimile: 310-221-8095

Attorneys for Petitioner Metro

Dated: January 3, 2024                          s/ James T. McDermott
                                                James T. McDermott, OSB 933594
                                                Dwain M. Clifford, OSB 025074
                                                Attorneys for Respondent Exxon Mobil Corporation